UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY D. THOMAS,                              Case No. 12-11545

          Plaintiff,                      Julian Abele Cook
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On April 5, 2012, plaintiff Tracey D. Thomas filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Julian Abele Cook referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability insurance benefits and supplemental insurance benefits.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 13).

### B.   Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance

benefits and supplemental insurance benefits on October 27, 2008, alleging that

1

she became disabled beginning September 1, 2006.  (Dkt. 8-5, Pg ID 176-77, 180-82).  The claims were initially disapproved by the Commissioner on February 18, 2009.  (Dkt. 8-3, Pg ID 117-18).  Plaintiff requested a hearing and on November 16, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Kimberly S. Cromer, who considered the case de novo.  (Dkt. 8-2, Pg ID 54-115).  In a decision dated December 8, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 38-50).  Plaintiff requested a review of this decision (Dkt. 8-2, Pg ID 32-33), and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 7, 2012, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 26-28); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED.**

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1966 and was 40 years of age on the alleged disability onset date and 44 years old at the time of the administrative hearing.  (Dkt. 8-2, Pg ID 49).  Plaintiff's past relevant work history includes positions as an

administration clerk/underwriter and a customer service representative.  (*Id.*).  The

ALJ applied the five-step disability analysis to plaintiff's claims and found at step

one that plaintiff had not engaged in substantial gainful activity since the alleged

onset date.  (Dkt. 8-2, Pg ID 43).  At step two, the ALJ found that plaintiff's

obesity, degenerative disease of the knees, osteoarthritis of the knees, hypertension,

diabetes mellitus, pre-anemia, and depression were "severe" within the meaning of

the second sequential step.  (*Id.*).  At step three, the ALJ found no evidence that

plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 8-2, Pg ID 43-45).  The ALJ determined that plaintiff has the

following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.927(a) except the claimant cannot
> climb ladders, ropes or stairs.  She can occasionally stoop
> or kneel.  She needs to avoid concentrated exposure to
> heat, wetness, unprotected elevations, moving machinery,
> and dust, fumes or poorly ventilated areas.  She can
> perform jobs that have limited social interaction with
> coworkers or the public.

(Dkt. 8-2, Pg ID 46-48).

At step four, the ALJ found that plaintiff was unable to perform her past

relevant work because the exertional demands of the jobs are greater than what

plaintiff can perform with the assessed RFC.  (Dkt. 8-2, Pg ID 49).  At step five,

the ALJ denied plaintiff benefits because she could perform a significant number

of jobs available in the national economy.  (Dkt. 8-2, Pg ID 49-50).

3

### B.      Plaintiff's Claims of Error

Plaintiff contends that the ALJ made several contradictory and confusing

statements in her decision and misstates the medical evidence.  Plaintiff argues that

the ALJ ignored the medical opinions of trained treating physicians without any

rational basis.  Specifically, plaintiff complains that the ALJ rejected the medical

opinion of Dr. Attanasio because it is "extreme" and because there were no

documented "EMG/nerve conduction studies for the upper extremities" to support

his opinion.  However, according to plaintiff, the Social Security Administration

medical expert, Dr. James McKenna, stated at the hearing that plaintiff could only

stand 20 to 30 minutes at a time because of her "extreme obesity" (Tr. 55), and Dr.

Attanasio similarly opined that plaintiff could stand for 30 minutes at one time.

(Tr. 331).  And, plaintiff notes that while the ALJ stated that the medical opinion of

Dr. Attanasio is inconsistent with those of the state agency physicians and medical

experts, plaintiff avers that Dr. McKenna's opinion, relied on by the ALJ, was also

inconsistent with both the state agency physician as well as the treating physician.

The ALJ nevertheless relied on Dr. McKenna's opinion.

According to plaintiff, the most troubling aspect of the ALJ's decision is that

she dismisses the objective medical opinion of Dr. Attanasio without any rationale.

Plaintiff argues that the ALJ fails to explain why she finds the doctor's opinion

"extreme."  Plaintiff states that she had x-rays of her knees which showed

osteoarthritis (Tr. 231), and state agency consultative examiner, Dr. Atul Shah, stated that plaintiff "has severe medical impairments and functional impairments with prolonged walking, standing, sitting, climbing, which may hamper occupational activity." (Tr. 289). Plaintiff states that the ALJ never mentioned Dr. Shah's medical opinion in her decision, and instead relied on the opinion of a doctor who never examined plaintiff, but rather simply reviewed plaintiff's records. Plaintiff also argues that the ALJ never evaluated whether plaintiff is capable of a competitive work schedule, as required by SSR 96-8p. Thus, plaintiff contends, the ALJ's failure to give specific reasons and explain precisely how those reasons affected the weight accorded the physicians' opinions is a legal error requiring reversal.

Plaintiff also contends that the ALJ's RFC did not accurately portray her physical and mental impairments and nonexertional limitations. Plaintiff argues that the RFC determination is flawed because the limitations are contradictory to the severe impairments found in step 2, and that the RFC does not account for any restrictions in concentration. Plaintiff argues there is no medical evidence in the record that she is capable of sedentary work, and that the ALJ failed to include limitations to account for plaintiff's need to lay down (or recline) during unscheduled work breaks, complications from plaintiff's extreme obesity, or concentration problems related to plaintiff's depression or severe fatigue and pain.

5

Plaintiff contends that the decision does not contain an evaluation of plaintiff's obesity in accordance with the provisions set forth in SSR 02-01p, and the ALJ never discussed the need for plaintiff to ambulate with a cane, nor elevate her feet. Further, plaintiff contends that while the ALJ limited plaintiff to jobs that have limited social interactions with coworkers and the public, even though she found plaintiff only had mild difficulties in social functioning, there is no mention in the RFC regarding the ALJ's findings that plaintiff has moderate limitations in concentration, persistence, or pace, such as "the ability to understand and carry out simple to complex instructions, judgments in the workplace, as well as the ability to respond appropriately to usual work place settings." Plaintiff contends that the ALJ was obligated to factor plaintiff's moderate limitations into her RFC.

Finally, plaintiff suggests that the ALJ should have considered contacting Dr. Attanasio for clarification of his opinion rather than rejecting that opinion, citing SSR 96-5p, 1996 WL 374183, at *6. Therefore, according to plaintiff, there is overwhelming evidence that documents plaintiff's inability to work from a physical and emotional standpoint and this case should be reversed for payment of benefits.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably evaluated the medical evidence and provided good reasons for giving plaintiff's treating physician's

opinion no weight. According to the Commissioner, the ALJ's RFC finding is supported by substantial evidence, including the relief of her symptoms through treatment, the clinical findings from Dr. Shah, and the medical opinions from Drs. Ahmed and McKenna, both of whom found that plaintiff could sustain work activity. Specifically, the ALJ noted that plaintiff's treatment records from the Professional Medical Center and outpatient reports from the Harper-Hutzel center showed that her hypertension and diabetes were well-controlled and stable with medication. (Dkt. 8-2, Pg ID 46, citing Tr. 201-29). The Commissioner further contends that the ALJ's RFC finding is also supported by the clinical findings from Dr. Atul Shah, an internist, who examined plaintiff in December 2008. (Tr. 287-93). On examination, plaintiff had moderate restriction of range of motion in her lumbosacral spine, but she was able to touch her toes with some pain and discomfort, and she had no tenderness in her lumbosacral spine and no obvious deformities, swelling, or muscle spasm. (Tr. 289). Dr. Shah further noted that plaintiff retained sensation and had normal findings in her upper and lower extremities. (Tr. 289-92). Plaintiff had a limp with crepitation and a moderate restriction of range of motion in her knees, but she did not require any assistive device to walk. (Tr. 289). Plaintiff's power, tone, sensation, and reflexes were normal with no muscle weakness, and Dr. Shah concluded that Plaintiff would have impairments with prolonged walking, standing, sitting, and climbing, but

stopped short of finding that Plaintiff's limitations would prohibit her from working.  (*Id.*).  The Commissioner argues that Dr. Shah's findings are consistent with the ALJ's determination that plaintiff could perform a restricted range of sedentary work.

The Commissioner contends that the ALJ's RFC finding is also supported by the opinion from Dr. Muhammad Ahmed, a state agency doctor who reviewed Plaintiff's medical records, explaining that state agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  *See* 20 C.F.R. § 404.1527(f)(2)(I).  Dr. Ahmed found that plaintiff could lift up to twenty pounds occasionally and up to ten pounds frequently; stand/walk for at least two hours in an eight-hour day; and sit for about six hours in an eight-hour day.  (Tr. 297).  Dr. Ahmed also placed several postural limitations on plaintiff and opined that she would need to avoid concentrated exposure to wetness.  (Tr. 298, 300).  Dr. Ahmed specifically concluded that plaintiff's functional limitations would not limit her ability to perform work-related activities eight hours per day, five days per week on a sustained basis.  (Tr. 303). According to the Commissioner, the ALJ reasonably gave some weight to this opinion, but also gave the benefit of the doubt to plaintiff's subjective complaints, and issued additional restrictions on plaintiff's RFC.  (Dkt. 8-2, Pg ID 48).  Specifically, the ALJ further found that plaintiff could

lift and carry a reduced amount of weight and he added other postural and environmental limitations to plaintiff's ability to work.  (Dkt. 8-2, Pg ID 45-46).

The Commissioner states that the ALJ also relied on the testimony of Dr. James McKenna, a board certified internal medicine doctor who testified at the hearing.  (Dkt. 8-2, Pg ID 48).  Dr. McKenna noted that plaintiff was obese and had problems in her knees and a history of diabetes.  (Tr. 40-41).  Based on the record, Dr. McKenna opined that plaintiff had no manipulative limitations but would be restricted to sedentary activities, with no climbing of any type, and slightly less than two hours of standing/walking in an eight-hour workday.  (Tr. 44, 46).  Dr. McKenna also noted that Plaintiff would be unable to tolerate moderate exposure to extreme heat or humidity because of respiratory irritants and obesity, and stated that she should avoid unprotected heights and moving machinery.  (Tr. 47).  The Commissioner argues that Dr. McKenna's medical opinion is further evidence in support of the ALJ's RFC finding that plaintiff could perform work despite her limitations.

The Commissioner further contends that the ALJ also found that plaintiff's complaints of disabling diabetes was undermined by her failure to comply with prescribed treatment, noting that plaintiff admitted to a poor diet in October 2009.  (Dkt. 8-2, Pg ID 46, citing Tr. 305).  *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment

can restore your ability to work."); *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *7 (1996) ("the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

The Commissioner rejects plaintiff's suggestion that the ALJ should have given more weight to the opinion of her treating physician, Dr. Attanasio. The Commissioner explains that a treating physician's opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Commissioner argues that in this case, the ALJ gave several good reasons for giving no weight to Dr. Attanasio's opinion. Specifically, the ALJ noted that there was no medical evidence to support his more extreme restrictions. (Dkt. 8-2, Pg ID 48). 20 C.F.R. § 404.1527(d)(3) (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion). For example, the ALJ pointed out that Dr. Attanasio opined that plaintiff was restricted to no more than 15 minutes of sitting at a time and for no more than two hours total. (Dkt. 8-2, Pg ID 48, citing Tr. 331). However, Dr. Attanasio's own treatment notes failed to support this restriction, and he did not provide any basis for his opinion. In fact, Dr. McKenna also questioned

10

the reasoning behind Dr. Attanasio's recommendation, noting that the record did not support such a limitation on sitting.  (Tr. 49).  The ALJ also noted that this limitation was contrary to plaintiff's own assertion that she could sit through a movie while taking a break only once to walk to the lobby to stretch her legs.  (Dkt. 8-2, Pg ID 48, citing Tr. 73).  *See* 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

The Commissioner further argues that the ALJ properly found that the medical record did not support the several manipulative limitations Dr. Attanasio placed on plaintiff.  (Dkt. 8-2, Pg ID 48, citing Tr. 331).  The ALJ noted that there was no record of any EMG/nerve conduction studies for plaintiff's upper extremities and there was no indication that plaintiff reported any symptoms or received treatment concerning her hands.  (*Id.*).  Furthermore, at the hearing, Dr. McKenna questioned Dr. Attanasio's recommended manipulative limitations because there was no treatment record by the physician to support such a claim.  (Tr. 48).  Finally, the ALJ noted that Dr. Attanasio's conclusions were inconsistent with Dr. Ahmed's opinion and Dr. McKenna's opinion–both of whom found that plaintiff's had a greater RFC than Dr. Attanasio found.  (Dkt. 8-2, Pg ID 48).  The Commissioner concludes that based on this evidence, the ALJ reasonably declined to give Dr. Attanasio's highly restrictive opinion any weight.

11

The Commissioner further contends that plaintiff's arguments in favor of giving more weight to Dr. Attanasio's opinion lack merit. For example, plaintiff faults the ALJ for stating that there were no "EMG/studies for the upper extremities" to support any manipulative limitations. However, plaintiff fails to develop this argument any further or cite contrary evidence to support any manipulative limitations that she may have had. The Commissioner notes that, confusingly, plaintiff seems to abandon this argument altogether and instead argues that Dr. McKenna's limitation that she could only stand for 20 to 30 minutes at a time was consistent with Dr. Attanasio's opinion. Yet, according to the Commissioner, the ALJ did not reject Dr. Attanasio's opinion because he limited plaintiff to standing for 30 minutes at a time. Rather, as noted above, the ALJ gave no weight to Dr. Attanasio's opinion that plaintiff could not sit for more than 15 minutes at a time and had several manipulative limitations because those restrictions were unsupported and inconsistent with the evidence of record. (Dkt. 8-2, Pg ID 48).

The Commissioner contends that plaintiff also suggests that Dr. Attanasio's opinion was consistent with the findings of Dr. Shah, who concluded that plaintiff would have impairments with prolonged walking, standing, sitting, and climbing. The Commissioner argues that there is no dispute that plaintiff had severe impairments that produced pain and limited her ability to work. However, in this

12

case, the Commissioner contends that the ALJ expressly accounted for those

limitations by limiting plaintiff to a restricted range of sedentary work.  The

Commissioner claims that, significantly, the record failed to reflect that plaintiff's

impairments would be disabling.  The Commissioner further argues that plaintiff

overlooks that Dr. Shah's report was part of the report that Dr. Ahmed reviewed

when he concluded that plaintiff was capable of working despite her limitations.  In

response to plaintiff's complaint that the ALJ did not consider whether she could

sustain work for a full workweek, the Commissioner contends that the ALJ relied

on Dr. Ahmed's opinion, which found that plaintiff was capable of sustaining full-

time employment despite her impairments.  (Tr. 303).  Thus, the Commissioner

concludes, the ALJ's finding that plaintiff was capable of sustaining full-time work

is supported by substantial evidence.

　　　　And, in response to plaintiff's suggestion that the ALJ had a duty to

recontact Dr. Attanasio to clarify the reasons for his opinion, the Commissioner

explains that the Sixth Circuit has stated that where the treating physician's

"opinion was deemed unpersuasive not because its bases were unclear, but because

they were not corroborated by objective medical evidence," the ALJ was not

required by SSR 96-5p to recontact the treating physician.  *Ferguson v. Comm'r of*

*Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010).  Moreover, "the ALJ has discretion to

determine whether additional evidence is necessary." *Id.* at 275. The Commissioner

13

contends that the ALJ here did not discount Dr. Attanasio's opinion because he was unclear of the bases; rather, the ALJ noted that Dr. Attanasio's opinion was unsupported by his treatment notes and inconsistent with the record as a whole. (Dkt. 8-2, Pg ID 48).  Thus, the Commissioner concludes, the ALJ did not have a duty to recontact Dr. Attanasio for further development of the record.  The Commissioner states that while plaintiff may disagree with the ALJ, the ALJ was well within the zone of choice in declining to give the treating source opinion controlling or any weight.

The Commissioner argues that the ALJ also reasonably evaluated plaintiff's obesity and properly accounted for her substantial limitations in the RFC finding. (Dkt. 8-2, Pg ID 46-47).  The ALJ relied on Dr. McKenna's recommendation that plaintiff's obesity would cause her to have difficulty with environmental factors that affected her breathing, moving machinery, and unprotected heights (Tr. 46-47), and thus restricted plaintiff from concentrated exposure to heat, wetness, unprotected elevations, moving machinery, dust, fumes, and poorly ventilated areas.  (Dkt. 8-2, Pg ID 46-47).  The ALJ also restricted plaintiff from climbing ladders, ropes, or stairs, and found that she could only occasionally stoop or kneel. (Dkt. 8-2, Pg ID 45).  The Commissioner points out that Dr. McKenna found plaintiff could still perform sedentary work despite her obesity, which is consistent with the ALJ's RFC finding.  (Dkt. 8-2, Pg ID 45-46; Tr. 44).  The Commissioner

14

further notes that plaintiff has not cited to any record evidence demonstrating that her obesity further limited her functioning, and plaintiff ignores that the ALJ also reasonably relied on the opinion of Dr. Ahmed, who observed plaintiff was obese, but could still perform work-related activities. (Tr. 296-303).

As to plaintiff's suggestion that the ALJ failed to discuss her need for a cane, the Commissioner argues that while Dr. Shah suggested that plaintiff may need a cane, he also observed that she was able to walk without an assistive device. (Tr. 289). Here, plaintiff has not demonstrated that a cane was medically required, and the Commissioner contends that her testimony on this matter is unclear because she claims only that she used a cane given to her from "somebody else," not her doctor. (Tr. 69). And, to the extent plaintiff had difficulty walking for extended periods, the ALJ reasonably accounted for this restriction by limiting her to sedentary work. Similarly, the Commissioner contends the ALJ was not required to account for plaintiff's need to elevate her feet or lay down during the workday because plaintiff has not cited to any medical record evidence demonstrating that she would require those restrictions. And, to the extent Dr. Attanasio recommended that plaintiff raise her legs, the ALJ reasonably discounted that opinion for the reasons set forth above.

Finally, the Commissioner contends that the ALJ reasonably evaluated plaintiff's mental and social limitations. While plaintiff asserts that the ALJ was

obligated to find greater limitations to account for her moderate restrictions in concentration, persistence, and pace, plaintiff here has not cited any medical opinion that the ALJ overlooked or ignored with respect to her mental limitations. According to the Commissioner, there is in fact no medical opinion of record showing that plaintiff had any mental restrictions, and plaintiff's treatment records do not suggest that she would have difficulty understanding or carrying out instructions or making adjustments in the workplace.  Therefore, the Commissioner concludes, the ALJ was not required to include any such limitations in his RFC finding, and the ALJ's decision is supported by substantial evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

16

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

   If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

   The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become

19

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed

20

in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    Treating source rule

Plaintiff argues that the ALJ failed to reasonably evaluate the medical evidence and provide good reasons for failing to give the opinion of plaintiff's treating physician, Dr. Attanasio, controlling weight.  In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source, and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by

22

the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  The opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  An ALJ need not credit a treating physician opinion that is conclusory and unsupported.  *See Anderson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)).

A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment

and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.

"Although the ALJ is not bound by a treating physician's opinion, 'he must set

forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008

WL 822078, at *16 (W.D. Tenn. Mar. 26, 2008) (citation omitted). "Claimants are

entitled to receive good reasons for the weight accorded their treating sources

independent of their substantive right to receive disability benefits." *Smith v.*

*Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Courts have remanded the

Commissioner's decisions when they have failed to articulate "good reasons" for

not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson*,

378 F.3d at 545 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

Upon careful review, the undersigned finds that the ALJ properly weighed

the opinion evidence. With respect to Dr. Attanasio, the doctor opined that

plaintiff was diagnosed with osteoarthritis and diabetes mellitus, and that she could

work two hours per day, stand 30 minutes at one time and no more than 60 minutes

in a workday, sit 15 minutes at one time and no more than two hours in a workday,

lift five pounds, and only occasionally bend, stoop, balance, perform fine or gross

manipulations with her hands, or raise her arms over shoulder level. (Tr. 331). He

further opined that plaintiff needed to occasionally elevate her legs during the

workday, but that plaintiff did not have "any non-exertional limitations such as

side-effects of medication, fatigue, need to take rest breaks, etc., which would

interfere with [her] ability to work." (*Id.*).

The ALJ thoroughly considered the factors in the regulations in reaching the conclusion that Dr. Attanasio's opinion was not entitled to controlling or significant weight.  After listing Dr. Attanasio's restrictions, the ALJ found:

> In light of the overall medical evidence and the opinions of the state Disability Determination Service physicians and the medical expert's hearing testimony, I reject Dr. Attanasio's more extreme opinion regarding the claimant's limitations.  There is no medical evidence of record to support the more extreme limitations he imposed.  For example, Dr. Attanasio opined that the claimant was restricted to no more than 15 minutes of sitting at a time for no more than two hours. Yet, the sitting limitations are not supported by the claimant's own testimony that, although fidgety, she can sit through a movie or may just walk to the lobby once during the movie to stretch her legs. Similarly, there is a lack of record support for the physician's opinion that the claimant required manipulation restrictions.  The record is void of any EMG/nerve conduction studies for the upper extremities and there is no indication that the claimant reported such to the physician or that he administered any treatment for her upper extremities or hands.  Additionally, at the hearing, the claimant did not aver any manipulation restrictions.  I also note that the medical expert, Dr. McKenna questioned Dr. Attanasio's limitations where there was no treatment by the physician to support such.  Lastly, as noted above, Dr. Attanasio's conclusions are inconsistent with both the state agency physicians' positions and the medical expert opinion, which also detracts from a finding that the physician's more extreme opinions are entitled to controlling weight.

(Dkt. 8-2, Pg ID 48).

Despite this thorough analysis, plaintiff argues that in weighing Dr.

Attanasio's opinion, the ALJ failed to "give any rationale for her decision, only conclusory statements."  However, as demonstrated above, the ALJ gave several good reasons for giving no weight to Dr. Attanasio's opinion.  Plaintiff states that x-rays of her knees show osteoarthritis.  The ALJ discussed this fact in her decision, noting that the xray demonstrated moderate arthritis in the right knee and mild arthritis of the left knee.  (Dkt. 8-2, Pg ID 47).  However, whether or not plaintiff was diagnosed with osteoarthritis, standing alone, is not dispositive of disability.  The Sixth Circuit has repeatedly made clear that a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Here, as noted by the Commissioner and consistent with agency regulations, the ALJ accepted the symptoms attributable to plaintiff's diagnosis with osteoarthritis and properly incorporated those credible limitations into her RFC assessment, where she found plaintiff could perform a restricted range of sedentary work, with no climbing of ladders, ropes or stairs, and only occasional stooping or kneeling. (Dkt. 8-2, Pg ID 45-48).

Plaintiff suggests that Dr. Attanasio's opinion is consistent with the findings of Dr. Shah, who concluded that plaintiff would have impairments with prolonged walking, standing, sitting and climbing.  However, as the Commissioner explains,

26

the ALJ expressly accounted for those limitations by limiting plaintiff to a restricted range of sedentary work.  Further, Dr. Shah did not opine that plaintiff was so limited and his report was reviewed by Dr. Ahmed, who acknowledged that plaintiff has limitations in standing due to pain in her knees and that she is morbidly obese, but still concluded that plaintiff was capable of working despite her limitations.  (Tr. 296-303).  And, contrary to plaintiff's assertion that the ALJ did not consider whether she could sustain work for a full work week, the ALJ relied on Dr. Ahmed's opinion where he expressly found that plaintiff's "impairments would not limit her ability to perform work related activities 8 hours a day 5 days a week on a sustained basis as outlined in this form."  (*Id.*).

Plaintiff further complains that the ALJ relied on the opinions of the state agency physicians, and Dr. McKenna in particular, who she describes as "[a] doctor clearly paid by Social Security with the sole purpose of denying Plaintiff benefits."  (Dkt. 10, Pg ID 413).  However, state agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I).  "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6p, 1996 WL 374180, at *3 (1996); *see*

27

*also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly,
the ALJ's decision to accord greater weight to state agency physicians over
Blakley's treating sources was not, by itself, reversible error.").  As found by the
ALJ, the examining and reviewing state agency physicians described essentially
consistent findings regarding plaintiff's functional limitations, and the ALJ
reasonably gave some weight to the opinions of those physicians.  *See Johnson v.
Colvin*, 2013 WL 2319134, at *7-8 (S.D. Ohio May 28, 2013) (ALJ reasonably
found state agency doctors' findings were consistent with the evidence and the
record and thus gave those opinions more weight than that of the treating
physician).  Notably, as the Commissioner points out, plaintiff fails to cite to any
objective evidence or clinical findings in the record supporting Dr. Attanasio's
disabling RFC assessment.  As such, the undersigned finds that the ALJ properly
analyzed Dr. Attanasio's disabling RFC assessment and reasonably determined that
his opinion was not well-supported and inconsistent with other record evidence.
*See Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 175-76 (6th Cir. 2009)
(where the opinion of a treating physician is not supported by objective evidence or
is inconsistent with the other medical evidence in the record, this Court generally
will uphold an ALJ's decision to discount that opinion).  To the extent plaintiff
argues that the ALJ erred because evidence exists in the record which supports a
finding of disability, the Court finds such an argument equally unavailing.  *See*

*Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  It is the Commissioner's

function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of*

*Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir 1987), and that is exactly what

the ALJ reasonably did here.  The ALJ acted will within the permissible "zone of

choice" in her decision to reject Dr. Attanasio's more extreme, unsupported

opinion regarding plaintiff's limitations, *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th

Cir. 1994), and plaintiff's claim of error should be denied.

### 2.    The ALJ's RFC finding is supported by substantial evidence

The ALJ determined, after a thorough review of the record evidence and

hearing testimony, that plaintiff could perform a restricted range of sedentary work

with several environmental and postural limitations and only limited social

interaction with the public and co-workers.  (Dkt. 8-2, Pg ID 45-48).  Plaintiff

alleges that the ALJ's RFC determination is flawed, claiming "[t]here was no

evaluation by the ALJ as to whether the Plaintiff needed to lay down (or recline)

during unscheduled work breaks, complications from Plaintiff's extreme obesity,

or concentration problems related to Plaintiff's depression or severe fatigue and

pain."  (Dkt. 10, Pg ID 416).  Contrary to plaintiff's assertions, the ALJ did find

that plaintiff was obese and considered the effect of plaintiff's obesity on her

severe impairments pursuant to SSR 02-01p.  (Dkt. 8-2, Pg ID 44).  The ALJ

accounted for the limitations produced by this condition by limiting plaintiff to

29

sedentary work with several postural and environmental restrictions, relying on Dr. McKenna's recommendation that plaintiff's obesity would cause her to have difficulty with environmental factors that affected breathing, moving machinery, and unprotected heights. (Tr. 46-47). The ALJ further relied on the opinion of Dr. Ahmed, who acknowledged plaintiff's obesity but still found she could perform work-related activities. (Tr. 296-303). And, as the Commissioner points out, plaintiff has not cited to any record evidence demonstrating that her obesity further limited her functioning. *See Essary v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 662, 667 (6th Cir. 2004) (citing *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting plaintiff's "argument that the ALJ erred in failing to consider his obesity in assessing his RFC," explaining that, "[a]lthough his treating doctors noted that [plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions")). Plaintiff's claim of error therefore fails.

Plaintiff also complains that the ALJ did not include the need for plaintiff to use a cane or to elevate her feet in the RFC assessment. However, although Dr. Shah suggested that plaintiff may need a cane, Dr. Ahmed noted that plaintiff was not seen using a cane and does not report the use of a cane. (Tr. 301). Further, Dr. Shah observed that plaintiff was able to walk without an assistive device (Tr. 289), and plaintiff did not indicate that she used a cane or similar assistive device in her

Function Report.  (Tr. 186).  Plaintiff has failed to demonstrate that a cane was prescribed or medically necessary, and the ALJ accommodated plaintiff's claimed difficulty walking for extended periods by limiting her to a restricted range of sedentary work.  Similarly, the ALJ properly noted that there was no medical evidence of record documenting plaintiff's need to elevate her feet during the workday.  (Dkt. 8-2, Pg ID 48).  And again, plaintiff has failed to cite any medical evidence demonstrating that this treatment was ordered by any physician.  (*Id.*).  Although Dr. Attanasio indicated that plaintiff needed to occasionally elevate her legs, as explained above, the ALJ reasonably discounted this opinion as not supported by the medical record evidence.  (*Id.*).

Finally, plaintiff argues that the ALJ failed to include moderate limitations in concentration, persistence, or pace in the RFC determination.  The ALJ here found that plaintiff's depression was a severe impairment at step two of the sequential evaluation, and at step three, found that this impairment did not meet or medically equal a listing.  (Dkt. 8-2, Pg ID 43-45).  In making that determination, the ALJ considered whether the "paragraph B" criteria were satisfied and found that plaintiff had mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation.  (*Id.*).  The ALJ went on to explain that these limitations in the "paragraph B" criteria are not a residual functional

capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  Therefore, the ALJ explains, her following residual functional capacity assessment reflects the degree of limitation [she] ha[s] found in the 'paragraph B' mental function analysis."  (*Id.*). *See Southworth v. Comm'r of Soc. Sec.*, 2013 WL 3388946, at *17 (E.D. Mich. July 8, 2013) (finding this language means that the ALJ believed that his "moderate" concentration, persistence and pace rating was fully accounted for by the limitations in his RFC, e.g., "simple, routine and repetitive tasks that require only simple decision making").  The ALJ here explained that "there is no medical evidence of record to support any mental restrictions that will prevent [plaintiff] from performing simple repetitive work."  (Dkt. 8-2, Pg ID 48).  Plaintiff seems to argue that the ALJ was required to otherwise translate her moderate restrictions in concentration, persistence or pace into additional limitations in the RFC finding, relying on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). However, in *Ealy*, the plaintiff's doctor specifically limited him to "simple repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical" and the ALJ failed to include that limitation or any speed- or pace-based restriction in the RFC.  594 F.3d at 516.  In this case, plaintiff has not cited to any medical opinion of record showing that plaintiff had any mental restrictions, and her treatment records do not suggest that she had any difficulty understanding

32

or carrying out instructions or making adjustments in the workplace.  In fact,

plaintiff stated in her Function Report that she can pay attention "for the duration

of [the] situation," she follows written and spoken instructions "very well," she has

"no problem" with authority figures, she "work[s] well under stress" and she "can

adjust to changes easily."  (Tr. 180-87).  Further, the ALJ did include in her

hypothetical question to the vocational expert the limitation to simple, repetitive,

routine type work.  (Tr. 84-85).  The courts recognize there is no "bright-line rule"

requiring remand whenever an ALJ's hypothetical includes a limitation of

"unskilled work" but excludes a moderate limitation in concentration.  *See Cohen

v. Comm'r of Soc. Sec.*, 2013 WL 3581962, at *10 (E.D. Mich. July 12, 2013)

(citing *Hernandez v. Comm'r of Soc. Sec.*, 2011 WL 4407225, at *9 (E.D. Mich.

Aug. 30, 2011), *adopted by* 2011 WL 4406346 (E.D. Mich. Sept. 22, 2011)).

"Rather, this Court must look at the record as a whole and determine if substantial

evidence supports the ALJ's hypothetical and RFC assessment."  *Id.*   Looking at

the record as a whole, the undersigned finds that the ALJ's hypothetical question

captured her well-supported findings regarding plaintiff's limitations and there was

no need for the ALJ to include any more limitations in the RFC, and therefore

plaintiff's claim of error is without merit.  *See Vlach v. Comm'r of Soc. Sec.*, 2013

WL 3766585, at *12 (N.D. Ohio July 16, 2013) (ALJ accounted for plaintiff's

limitations with regard to concentration, persistence, and pace to the extent these

limitations were supported by the record, and there was no need to include any more limitation in this area, including specific speed- and pace-based limitations); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (upholding ALJ's hypothetical question that limited a claimant with moderate deficiencies of concentration, persistence, or pace to simple unskilled work, where the claimant failed to explain why the facts of his particular case required a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace).

## IV. RECOMMENDATION

For the reasons set forth above,  the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2013                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 9, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joshua L. Moore, Andrew J. Lievense, AUSA, and Emani Niranjan, Social Security Administration.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov